Mr. Sulton. Good morning. May it please the Court, I am William Sulton and I represent the plaintiff appellant Darrell Haze in this case. We have presented three issues for your review. First, whether the district court erred in denying Mr. Haze's motion for summary judgment, partial summary judgment. Second, whether the district court erred in denying Haze's post-verdict motion for a finding of excessive force. And third, whether the district court erred in denying Mr. Haze's motion for a declaratory judgment. First, beginning with the motion for partial summary judgment, this court does have the Mr. Haze's motion is of course based upon the materials that were presented to the district court at the time rather than the sufficiency of the evidence at the trial. And we believe that that falls squarely within this court's precedent. Was the false arrest claim part of your post-trial motion? It was not, Your Honor. Then it's gone. I don't believe so. Based on what? Based on... You can't get review of the denial of summary judgment once you've gone to trial. The jury rules against you unless you raise the legal issue in a Rule 50A or B motion. Your Honor, as we pointed out in our reply brief, this court's precedent establishes that summary judgment users do not have to relitigate their motions under Rule 50A or B. And I would submit Lawson v. Sun Microsystems at 791 Federal 3rd 754 Pinpoint 761, which is a 2015 case of this court, for that proposition. And I would further point out that I don't think it's unusual for a defendant who go to trial lose and then appeal the summary judgment denial and we're just saying that the rule for plaintiffs is no different. Although I will grant you that the situation in that particular case was a defendant. Again, the central issue as it relates to Mr. Hayes' motion for partial summary judgment is, Mr. Hayes is standing outside of the Milwaukee Bucks arena and we're talking about Officer Kubicek's facts here. He sees Mr. Hayes holding a sign saying, we need tickets, next to another man who's holding a sign saying, now selling tickets. Officer Kubicek then testifies both in his court as well as his underlying testimony in the municipal court trial that he stops Mr. Hayes because he believes that he's engaged in ticket scalping but that the real purpose of the stop is to investigate fraudulent ticket sales because earlier in that week he received information that there had been some fraudulent ticket sales outside of the Milwaukee Bucks arena. Mr. Hayes, according to Officer Kubicek, tells the officer that he does not have put up with racial profiling and turns around and walks away. What happens next is the reason why this is an arrest. The officer grabs Mr. Hayes, puts him into a pressure hold and handcuffs him. This is not a case where Officer Kubicek is investigating an armed robbery. Mr. Hayes is not a murder suspect. Mr. Hayes is standing outside of the Milwaukee Bucks arena holding a sign saying, we need you to put him in a pressure hold and handcuffed. There is no officer safety concern in this case at all and the officer doesn't even articulate any safety concern for why he would need to grab Mr. Hayes, put him in a pressure hold and handcuff him. We believe that this is a clear arrest. Moreover, Mr. Hayes had already communicated to the officer that he did not wish to talk to him and turned around and walked away. We believe that this is a critical issue as it relates to how citizens interact. It is well established by this court's precedent that someone who's under arrest can terminate a police interrogation. That right is no less if you're on the street. The only difference, of course, is if you're under arrest you can't physically walk away. Here Mr. Hayes did walk away. The officer was upset and his testimony establishes that he grabbed him, puts him in a pressure hold and handcuffs him. This was not related to any ticket scalping investigation. He did not have reasonable suspicion in our view to even talk to him about ticket scalping, but even if he did, he certainly didn't have it for fraudulent ticket sales, which he testified to the City of Milwaukee's Municipal Court was what he was trying to establish. Well, the officer had been told that your client was fighting with a woman moments earlier, right? No, Your Honor. Well, let me back up. There was a trial here. The officer, the officer offered different facts at trial than what he offered at summary judgment. And we're asking the court to review the summary judgment submissions. That's the whole problem with this argument. We've now had a trial. The facts have been fully aired in a trial and the jury ruled against you. So we're looking at the legal issue from the standpoint of the trial record, not the summary judgment record. I would submit that you don't get a second try here. Sure. Let me just say that I don't think Lawson establishes that. But let's consider the trial testimony since since you asked about it, because I still think it's irrelevant to the analysis here. Um, what Officer Kubicek testified to was that he stops Mr Hayes and that Mr Hayes turns around and goes into a jog or a brisk walk is how he puts it. He says that the other ticket seller had made the statement that Mr Hayes was fussing and fighting with his girlfriend or with him, depending on which section of the transcript you read. And Officer Kubicek says that he then tracks down Mr Hayes, grabs him, puts him in a pressure hold or a pincher grip. He describes it several different ways and handcuffs him. But even in that... Right, because he's disobeying the officer's direction to stay put and cooperate with the Terry stop. And he's been reportedly fighting with someone. So, you know, we've got legions of cases talking about the use of handcuffs in the context of a Terry stop, and it doesn't automatically turn it into an arrest. Sure. But I think the facts are not as the court describes them. He does not direct Mr Hayes to stay put. Mr Hayes does not disobey his order. Mr Hayes, according to the officer's testimony, simply turns, goes into this brisk walk slash jog. Um, and fussing and fighting that term, fussing and fighting doesn't doesn't connote a physical fight. Uh, the ticket seller was not communicating to the officer that he was punched or beat up or anything like that. It was... What he was referring to is an argument, and not every argument in the street goes... Well, the officer is entitled to take fussing and fighting at face value and, you know, believe that he objectively has some concerns about officer safety and safety of all the crowds around the Bradley Center at this highly sought after hot ticket game, right? Well, I don't know how sought after the game was, but let me say this. I still think... There's a lot of people around, right? He's gotta freeze the situation, control the situation. But that doesn't end the analysis here, because just because the officer can use force to evacuate a stop doesn't mean that there's not an arrest here. And keep in mind, the jury also found that there was no reasonable suspicion to even stop him. And that's where this court's analysis should really begin, which is at the beginning, which is, did he have reasonable suspicion to stop Hayes to investigate the original ticket scalping or fraudulent ticket sales? And if so, how long could he hold him for? And what type of force could he use for that? When the officer testifies about fussing and fighting, he's talking about something that isn't even related to Hayes, number one. He's talking about a conversation between Officer Colonel Reynolds and this other ticket seller, which is in close proximity. He says he hears it. But again, this court's analysis really needs to start at the beginning. You see a man holding a sign saying, we need tickets. Where is the reasonable suspicion for fraudulent ticket sales? There isn't any. Their secondary backup argument is, well, there may be a non-criminal municipal court violation for selling tickets over face value, but that doesn't even hold water. He's standing there holding a sign saying, we need tickets. The fact that there's another man saying that there's a sign selling tickets only indicates what we all know, which is that there are different prices for different seats. People have a preference on seats. It doesn't indicate ticket scalping at all. And I don't think that's a reasonable basis to stop Mr. Hayes. And even if it was, it was not reasonable to grab him and... Or to bar him from walking away. As it relates to Mr. Hayes' related excessive force claim, again, the central issue in this case really is the force he used and whether or not it amounted to arrest, but also whether or not it was excessive. And in this case, again, based on the trial testimony, it was excessive to grab Mr. Hayes, put him in a pressure hold, and handcuff him to discuss what someone else said was fussing and fighting. This is not a crime of violence. I don't think that's a reasonable interpretation of that phrase, fussing and fighting. Again, I point out there's... Again, this court's analysis should begin at the beginning as to whether or not there is reasonable suspicion to even stop him, much less put their hands on him. This was not a situation where Mr. Hayes was fleeing from the officer, although he says he turns around from him and goes to this walk slash jog. That's not equivalent to headlong flight. And in this case, again, the crime being investigated is not even really a crime and really shouldn't end up with somebody in handcuffs and a pressure hold. Lastly, I'd like to address the declaratory judgment. We do agree with the appellee that the district court has discretion to issue a declaratory judgment under the act. The problem in this case is that the district court's decision denying our motion for declaratory judgment simply doesn't provide any reasons for why that motion is being denied. Instead, what the district court says is that the verdict can serve as a declaratory judgment as opposed to describing why our request is inappropriate. And we think that under that circumstance, the district court did abuse its discretion in denying the request. I'll reserve some time. Yeah. Yes. Thank you. Mr. Patterson. Morning, judges. I'm Robin Patterson, Milwaukee Assistant City Attorney. I am here representing feel Mark Kubicek, the defendant in this matter. May it please the court. The Supreme Court has said that the courts of the district court has asked us to consider motions requesting review of sufficiency of the evidence in the absence of 50 B motions. It is clear on the false arrest issue. There is no 50 B motion that has been made here, and I think the analysis ends essentially there. That's the position of Mr Kubicek. Mr Hayes, for his part, as I understand it applies to plaintiffs as well as I understand it. Yes. Ortiz was, I think, a summary judgment issue made by defendants, right? Right. They wanted to renew a qualified immunity decision, as I understood it. Their argument was this. You can appeal this if it's denied. The court said, Yeah, you could have, but you chose not to. And now you can't, after the fact, decide you want to go back and appeal that qualified immunity decision. Right. And why shouldn't that be specific to the qualified immunity context? Because qualified immunity... The plaintiff had no basis to appeal the summary judgment against him. There were the partial summary judgment against him in this case. The reason why it should apply to qualified judgment, qualified immunity and not to the false arrest claim is because if qualified immunity should have been granted, it eliminates the need for the trial, which is what qualified immunity does. My question is, why does it apply in this context? Because the court itself made a decision that the sufficiency of the evidence, there were genuine disputes and material facts that it could not decide and could not render a decision purely as a matter of law, and so it wanted it to go to trial. And even in qualified immunity cases where qualified immunity is denied because of that same reason, because there are disputes of genuine material facts, there is no right to interlocutory appeal. So that is the common characteristic between those. As I understand Mr. Hayes' argument, as far as it goes, is that he gets around the sufficiency of the facts requirement by stating, well, I'm not really trying to call the sufficiency of the trial record facts into question here, because what I want you to do is I want you to consider Court of Appeals, the record as it existed at the time the summary judgment motions were made. And so therefore, what Mr. Hayes is asking, as I understand it, is Court of Appeals, I want you to ignore the trial facts, the evidence deduced there, ignore the decisions of the jury as rendered in their verdict, and instead focus, put yourself in the shoes of the district court, and make a decision as a rule of law. First, make a decision that there were no genuine disputes and material facts, and then secondly, rule as a matter of law in my favor. That's a novel argument to make and sort of couches it in this pure question of law framework that is necessary. However, I think it fails because there is no legal authority that allows this Court of Appeal to do that. Mr. Hayes never cited any. I was not able to find any. The closest that Mr. Hayes comes in his briefs, at least, is citing six star holdings, which indicates that it can do this, that pure questions of law, rule 50 motions aren't necessary. The problem is that doesn't address the issue here. That doesn't say, Court of Appeals, you can put yourself in the district court's shoes, and furthermore, you can ignore the trial record and instead use the summary judgment record. So with the utter absence of any authority to do what he suggests to do, I propose that he loses on that point. Mr. Peterson, at the time it was before the district court, was there any dispute between the officer and Mr. Hayes as to the arrest? Whether he was put under arrest or not, yes. There was a dispute? Well, the ultimate dispute was that Mr. I'm just saying on the question of granting partial summary judgment as it was stood before the district judge. What facts were in dispute as to the arrest? At the time of the summary judgment motion? Mm-hm. Just the overall character of what happened. We, our position was there was never any arrest, so that was one of the issues. Was there ever an arrest, and if there was an arrest, when did it happen? It was Mr. Hayes' position that it happened when he was placed in handcuffs, when he was stopped. We, it was our position that no, there was no arrest. That was essentially controlling a scene during a Terry stop. And that if there was an arrest. That's a pretty, that's pushing Terry right to the edge, isn't it? Well, it should, certainly it's getting to the boundaries. But I believe there is sufficient case law to say that under the circumstances, if there's officer safety considerations, or just scene considerations like there were here, we're in a busy part of the city. So you're saying the district judge under no circumstances could have looked at the facts and granted the issue of a partial summary judgment on the issue of whether he was arrested because there were facts in dispute. I, yes, yes. It's our position that the court was correct in determining that there were sufficient material disputes of fact, and that it had to go to a jury for them to decide. The party's versions of how this all went down were radically different, as I understand it. Yes. The, Kubicek and his partner said, you know, one thing. And, and Mr. Hayes said another about what actually happened point by point by point. Right. There's very little disagreement on any of those points, as I understand the record. Right. They all agree they're at one particular place at one particular time. And after that, it wildly diverges. That is correct. Right. And the jury sorted it all out and said there was no arrest. Yes. Right? Yes. And no excessive force. That's correct. And I think what Mr. Hayes is trying to accomplish here, he could accomplish. He could, had he just made the 50B motion.  Does not support the verdict here. And this court has the ability to review that. And there's certain standards in place. Well, it's a pretty steep standard for the district court and us. To overcome, to overturn a jury verdict? Absolutely. It's very steep. It's not in his favor, but at least he'd be in through the front door. I'm saying he's not even getting through that front door for this court to even consider that because he did not make the motion. And that might be unfortunate or someone might even say that's unfair just because I didn't make a motion. But this isn't some recondite unknown area of law that you have to make the motions. You don't make the motions, you don't have a right to appeal. And that's the situation that Mr. Hayes finds himself in here. And the fact, just to underscore the fact that what we're really talking about is sufficiency of the evidence. Is in his reply briefs, Mr. Hayes argues you should court take into consideration the factual deviations, he calls them. Calling the credibility of Officer Kubicek between his municipal court, his testimony, his citation narrative, what he ultimately testified at trial. Clearly, that's the job of the jury, to make that kind of credibility determination. So on that point, I think I've made sufficient argument, unless there's any more questions on that point. Moving on to his second and third points, I'll be very brief. He argues there's a per se, there should be a per se finding that there was excessive force. Because the jury did indicate here that the initial stop was not supported by reasonable suspicion. That was a finding of the jury. And it was indicated that there was a pressure hold. He was described as a light grasp of the elbow and a control of the hand. I'm not going to say that wasn't a use of force. It clearly is. He's physically preventing him from going anywhere. But the jury itself made a decision on this. They were asked point blank, was there excessive force? Was there unreasonable use of force? They said no. And so this idea that there could be a per se finding goes against the black letter of the law. Is this verdict inconsistent internally? Yes, I believe so, yes. And the remedy for that would be what? If it was not consistent? I asked if it was inconsistent. Maybe you misheard me, I'm sorry. I'm sorry, I misheard, yes. I believe it's consistent. It is not inconsistent on that point. And this is within the purview of the jury. They said there was a stop that was unsupported by reasonable suspicion. However, it was not a proximate cause to any injury. And that any force used by Officer Kubicek was not unreasonable. And they were asked, did he ever arrest Mr. Hayes? And they said no. So I think this can be supported by the evidence here. Because Mr. Officer Kubicek was just motivated by getting him to stop. He believed he had reasonable suspicion. I think the law is clear that under Terry Stops, you can, an officer is entitled to utilize some force. And that's what he did here. And it's consistent with it. And this is where we get back to the issue of the hurdle that the court would have to overcome in order to overturn this verdict. And that is that it would have to ask itself, is there no reasonable jury that could make this verdict finding based on the evidence we have here? And I think that is a hurdle that Mr. Hayes cannot overcome. Especially to the specific argument they make as to the per se finding. That is not only not the law, it's directly inconsistent with the black letter law on that issue in this circuit. Finally, on the declaratory judgment issue, I think it's very telling that Mr. Hayes didn't even respond to any arguments in his reply brief. I think the law here is that there is a great deal of discretion. And the district court did exercise its discretion. And it expressed its use of its authority sufficiently in its order. Where it said it is sufficient for the verdict form to act as any sort of declaration. The case law is clear that the district court is in the best position to understand the dynamics of the case and what equity would demand and the district court exercised its authority. It is documented that it did so. Mr. Hayes may have preferred some more long winded explanation, but I don't think that's compelled by the law. And I don't think that's the basis for overturning. That's all I have, unless there's any questions. Thank you, Mr. Peterson. Thank you. First, let me begin with Lawson versus Sun Microsystems. In that case, this court specifically held or cited the Ortiz case, saying the Supreme Court did not resolve the question in Ortiz in the manner in which the Officer Kubsek is describing it. Also in Six Star Holdings, a city of Milwaukee case, it says the same thing. Which is that summary judgment losers do not have to bring a motion under 50 A or B. It says that at page 804. On getting to the court's question as it relates to the dispute between Mr. Hayes and Officer Kubsek on summary judgment, the point I want to make here is that Mr. Hayes filed a motion for partial summary judgment based on the facts that Officer Kubsek testified to and the facts in his declaration. So there isn't a dispute as to what Officer Kubsek testified to and his declaration agrees with his municipal court testimony. It is true that in our brief we do point out that there are some factual deviations, which we discussed earlier, but that mainly goes to the excessive force portion of this case. What I point out is that when an officer uses force against a citizen, it can be unreasonable. And it can be unreasonable in terms of being excessive, but it can also be unreasonable in terms of needing a different standard such as probable cause. And so really we've got Irish twin claims here as it relates to this particular incident. But there isn't any dispute as to what Officer Kubsek testified to, what his version was, that was put before the district court. It is true that Mr. Hayes does describe his injuries differently. He does describe the nature of the physical contact differently than Officer Kubsek. But I don't think that bars this court from resolving that question here under Lawson versus Sun Microsystem or the Six Star Holdings case. As it relates to the excessive force inquiry, again, I understand that we did in our first brief put it almost in terms of a per se rule. But really what we're asking the court to do is look at Graham. Look at the Graham factors and determine the severity of the crime. This was not a split second decision needed for officer safety. The officer did not have any reason to believe Mr. Hayes was armed or dangerous or anything like that. That's all we're asking the court to decide. The court does not have to adopt a per se rule to reverse the decision. We don't think any reasonable jury could find that the force, the pain compliance technique that he testifies to, that's what it is. It's a plain compliance technique, was reasonable for somebody holding a sign saying we need tickets. All right, thank you, Mr. Sultan. Thank you, Mr. Peterson. Case is taken under advisement, and the court will proceed to the fourth.